Mr. Thomas, you may proceed. Thank you, Your Honor. Bruce Thomas, before the appellants, Plaintiffs below, the surviving spouse and children of Gabriel Eduardo Olivas. As you know, this is the second appeal in this case. The first was an interlocutory appeal by the two named individual defendants, Officer Guadarrama and Sergeant Jefferson, who contested the district court's ruling on qualified immunity. We lost that, and as you know, we have a cert petition pending that echoes much of Justice Willett's dissent from the denial of rehearing en banc. That does put us in an unusual procedural posture that I haven't been in, when we have an interlocutory appeal and an appeal from a final judgment pending at the same time, and where the relief we seek in the interlocutory appeal, if granted, would render the final judgment no longer final because it would add parties back to the lawsuit. Let me ask you on that. Would it be prudent for this panel to withhold any opinion in this case until the Supreme Court had ruled in a final manner on the petition for cert in the underlying case? Yes, sir, I think it would be. That was our motivation behind requesting a stay of the mandate, and so consistently we still think that that would be a good idea. I will tell you what the status is as of right now. I had hoped we would have some clarity by now, because we're painfully aware that most cert petitions are denied pretty readily, but in this case the Supreme Court has not been in any hurry to decide this cert petition. Just yesterday it rescheduled it for the 13th time, and the court has two conferences left in this term. Well, it's a hard case. I mean, it is a hard case. I appreciate that. So I don't pretend to say that we're going to get a ruling of some sort because there are two sessions left and two conferences left in the term. I don't know that. I'm just saying that. In any effect, I suppose if the Supreme Court denied cert, that does not really affect your Mornell claim. True. Because that's completely separate from the interlocutory appeal on qualified immunity. True. But if it did rule in favor of the—if it reversed us, then that may have an effect on what would happen in your Mornell claim. I think it would change everything, yes. I think it would. It would render the— Well, the district court would think it changed it because the district court relied upon the fact that these two defendants got qualified immunity in deciding the Mornell claim. So obviously it does make a difference. Yes, yes. So you think we should hold the case until the Supreme Court rules? I do. Since you're here, I think we should assume arguendo that the Supreme Court denies cert or affirms because obviously if they reverse, that changes a lot of things. So let's address where we are now since you're here. Our complaint today is that the district court's final judgment was premature and that it was a product of an unfair procedure that was a straightforward violation. I understand that because your opponent, the city, did in fact say basically there had been this motion to dismiss and then the district court had denied it, but then the two individual defendants could appeal interlocutorily on the qualified immunity, and they did, and then they won. And so basically the city of Arlington was saying, hey, our Mornell should now win, and the district court agreed, and you all didn't oppose that with the actual facts. I mean you just said that's stupid and went on. So I guess I'm just trying to understand procedurally what happened. Yes, well, we didn't say it was stupid. What we said was not germane to our motion. We had filed after the court. We felt we had directions from the court to proceed on in the district court, let the Supreme Court do whatever it's going to do, but in the meantime proceed on. We had a scheduling order in the district court that was entered in a connection with an indicative ruling that was part of the first appeal where the one thing the court said in the scheduling order is that we would have 75 days to amend when the case was returned to the district court. That's at 581 of the record. It seemed to us that given the significant change of events that we needed some direction from the district court on how we were to proceed, so we filed what we thought was an uncontroversial motion for revision to the scheduling order to tell us how to proceed. The city opposed that, but it didn't file a motion. Well, but they expressly said you should grant our, so it's not like that was hidden. It was asked for. But we are entitled to notice from the district court if it's going to rule. Sui sponte and dismiss with prejudice. Sui sponte if a party has asked for it, even if they didn't fill out the form you were expecting. I think that is very important because it wasn't a motion because they couldn't file a motion, and they knew they couldn't file a motion. It's not the right time to file a summary judgment or another dismissal in the schedule. That's why you needed to get your schedule. They're just, you know, if you randomly mention in a response to a scheduling motion, oh, by the way, we want summary judgment, too, because there are claims. You don't have to respond and marshal your evidence to summary judgment, do you? No, we do not, and that is our point. They intended it to be a motion. They violated every local rule from the title to the failure of certificate of guards. Why didn't you file a Rule 59 or whatever? Well, why didn't we object? We did object to their— No, you said— But we did object to their trying to engage the merits. I understand that. That was your reply to their response. Right. But then did I miss it? Did you all file a Rule 59 after the district court entered what you conclude is a— No, no, we didn't file a Rule 59 because this court's precedent has said that we're not required to. Well, I'm just asking why you didn't, though, because it's a lot simpler to get the district court to address it than to come up here and travel to New Orleans and all of the involvement. That goes back to the Supreme Court action. We had thought we would perhaps have some clarity by now. We didn't see any significant reason to go back to the district court on a motion we didn't have to file. How long has that been pending now, the petition for cert? Since early February, since the court's precedent was clear that we didn't have to file a post-judgment motion, and the whole thing could become moot anyway. But it hasn't. But we weren't required to, and we didn't do it, and that's the reason why. Isn't there a chance to plead what you want to plead now, if that's the lay of the land of the case, of what your Monell theory would be, given the people who are out of the case and the people who are in, et cetera? That is the Davuti ruling, that we should have an opportunity to present our best case, given the change of the landscape. The city wants to apply a harmless error rule to the Davuti rule, but this court has never done so. The error precludes us from applying a harmless error rule review, doesn't it? I believe it does. In Carver and Miller v. Sam Houston, the court did not engage on the merits of the plaintiffs' potential for what they wanted to do. The district court was under the erroneous assumption that the dismissal of the case against the two officers took care of the Monell case as well. It just ignored it. They're two separate matters. Yes. Yes, it was. Not entirely. It appears that the district court didn't understand that. That is why a court should not rule sui sponte. It may well have been prompted from the city's response to our motion to act sui sponte. That might have been what the city wanted it to do, but this is a classic case of watch what you ask for because you may get it. If that's what they wanted, they led the district court into error. Why would we wait? Why would we? I understand we say, oh, this is relevant to Monell, but right now, why shouldn't you go back and plead your best Monell theory under what you got now? If the Supreme Court rules in your favor, then you can move for leave to—maybe things will be changed and that will be remanded back to us and you would have—but there's nothing that would keep us from ruling that you didn't have a—assuming argumento, that we were inclined to agree that, by golly, you should have had a chance to replead under the lay of the land, and this was sui sponte, and Davuti and Carver and all that apply. Why should we wait? Why shouldn't we just do that and get the case back into the two courts that could actually do something in this case? We're certainly willing to do that because it could be a lot of wasted judicial effort and party effort. For what? For you to go back to the district court? If we go back to the district court and we do that— Wouldn't you like to have them? That's why you're in the Supreme Court, right? Sure, we would like that. If you don't have qualified immunity, then your Monell case would be certainly amplified, even if you think you have a Monell case without them. Wouldn't it get better with them? Yes, it would. Okay, so you would like to just do it all at once and not be running around this and that and dancing and have to dance down a different path, even if it's a more winning path for you. Yes. And the other side probably doesn't want to do that either. Well, apparently they do. You'll have to ask them. But if we go back down— Well, the other side has a much better Monell argument if you don't have those two, even assuming arguenda we send this back. Because your argument about Elliott, well, we'll just say that that's lighter than the other two. And the notion that nobody has to be a problem in Monell is also a little bit lighter. So even if we conclude that this procedurally should have been handled differently, I'm not sure that's a great place for you to be if you don't win with the Supremes. It's certainly not our preferred place, and that's why we pursued it. Do you have anything else you want to point out? I think you will understand the procedural posture of the case, so I will give you back my time unless there are any more questions. What I would like for you to do is just to sum up your position now. What is your position with respect to this entire appeal that you're now making? Our position on this appeal is that it was a clear violation of the voting, that the court did not purport to be acting on a motion, did not tell us it was going to be treating the response that the city filed as a motion, did not calendar it, docket it as a motion. We were not on notice that we had to respond substantively on the merits in the time restrictions and the space restrictions of a reply to engage the merits of a dispositive motion. The district court could have put us on notice and told us to do that, but it did not, and therefore we did not engage the merits, and I don't think we had to. But in deciding the – in acting on the court's mandate, the district court tacked on an additional paragraph that disposed of the Monell claim sui sponte without reference to our pending motion for a change in the scheduling order, and it was a classic sui sponte ruling that violated the duty because it didn't give us notice that he was going to rule in a dispositive manner with prejudice and give us an opportunity to respond to say, wait a second, we think you misunderstand. There are other theories here, and we would like to amend as we thought we were going to be able to within 75 days. And you were prejudiced by the failure to allow the amendment? Yes. Okay, thank you. Yes. But Judge Haynes, just a question to you. It was kind of – you're right that you don't have to move, but if the district court is conscientious and realizes it's putting something – adding something onto the order, maybe not paying – for whatever reason, it might have been inclined to quickly correct that. It might have, and I take the point. I take the point. But we are where we are. Trial counsel did not do that. So I would like to mention one additional thing, and that is cities in its response on the merits, it gets the facts reversed. It says that on the Elliott situation, it says Elliott pepper sprayed Mr. Levis because he was doused with gasoline and showed a lighter, but it was just the opposite. It was the spraying him with pepper spray that caused him to stand up and douse himself with gasoline, display a lighter, and started yelling. And that's what put the chain of events in motion that eventually very quickly led to the other officers shooting their tasers and lighting them on fire. And in doing – commencing that pepper spray, Elliott violated at least four lines of authority on excessive force. It may be lighter than what we contend that the other defendants did. But it's still – I would say that if one pepper spray in McCoy v. Alamu, one unauthorized pepper spray in that case, is an obvious violation, then the four violations that Elliott committed is at least a plausible claim to assert below. Thank you. You've saved time for rebuttal. Mr. Jeffrey. Good morning. I'm Jim Jeffrey. I represent the city of Arlington in this appeal. And I would like to start with this notion that this was a violation of what this court did in the Davuti case because it's not. The Davuti case, the other cases that Davuti talked about and that have followed Davuti, have something where the district court on its own, unprompted by anybody, dismissed a case. You can't just throw things in into a scheduling order response and think that that tees them up. Well, respectfully, Your Honor, routinely in district courts, when I'm faced with a motion from somebody that I disagree with and I seek different or alternate remedies or relief, I do ask for that in my response, and I've never been told I can't. You cannot ask for a dispositive ruling that disposes of the whole case by burying it in a response about a scheduling order. And you could ask to brief it. You could say, Your Honor, to save time, you should get motions to dismiss from both of us, I mean, in responses, etc. But you cannot bury the lead of an important dispositive motion by mentioning it in a response to a housekeeping motion. Well, Your Honor, the motion, the response that the city filed, actually doesn't address the request for a scheduling order other than to say it's inappropriate because the court should grant dismissal. What was the title of the pleading that you filed? I think it was called, I think the attorney that filed it called it a response to the motion for scheduling order. But the body of it was five paragraphs, as their briefing points out here. Yeah, but you see now, it gets you in trouble. Whether you can do it or you can't do it, it's going to get you in trouble. And the other thing, on this case, I think it's all the dismissal itself on the merits is an error on the part of the district court. I don't know why the district court dismissed the Monell case. What was the reason for dismissing the Monell case? The reasoning was Los Angeles v. Heller that there was no Fourth Amendment violation and was based on this court's decision in the first appeal. And I think what's important to look at, Judge Jolly, in the unanimous— We didn't say—well, I guess we did say— In the unanimous opinion— Why couldn't they—excuse me, go ahead. Well, and I'm also referring to the concurrence you wrote in denial of the request Ron Bonk reviewed. But that's not—respectfully, it's a very well-written document. That's not legally—that doesn't say anything or do anything with the parties. And it doesn't say that you can't bring new claims against new parties or elaborate on the parties you already have there to explain how they are the Monell people. If they should have a chance to amend, this would have been a wrong decision straight up. Without letting them have a chance to amend to plead their best case, this is a wrong decision, apart from the fact that it was sui sponte. And, Your Honor, respectfully, what I was trying to say, in the panel opinion, the facts are determined that this man had created an immediate, serious, deadly risk to everyone in the House. Those facts aren't going to change. The panel opinion did decide that there was no constitutional violation, that the conduct was reasonable, and that the force they used was not excessive under the Fourth Amendment. And, Your Honor, that's the point I'm making. The panel decision determined that the use of tasers, which it characterized and analyzed as deadly force, was not unconstitutional under the Fourth Amendment. I'm sorry. Let Judge Dolley answer. I'm just saying that that decided qualified immunity. Now, it decided that these officers did not commit a constitutional violation. Yes. Now, I don't know what is left under Monell, but failure to train where they could argue that a different result could have been reached if the officers had been properly trained. I don't know, but it's completely separate from the qualified immunity issue that was before us in the case involving the individual policeman. So, to me, I mean, the mistake of the court, not only adequate notice issue, but it's the merits of it, dismissing the entire case at that point. And, Your Honor, respectfully, let me hypothesize what happens if this case is remanded. And, of course, let's also assume the Supreme Court doesn't take the case. So we're back – if it's remanded, we're back in the district court. And this court has already determined that everyone in the house, everyone, including Officer Elliott, who was the only other officer involved, everyone in that house was facing a significant, immediate risk of death or serious injury from Mr. Olivas. And what this court also determined is that the use of tasers, which were analyzed as deadly force, was not a violation of Fourth Amendment standards. So if Officer Elliott at most used pepper spray, how could that ever be a violation of Fourth Amendment standards? It's not. Okay, but did the other side have an opportunity to make that argument before the district court? Yes, they did because when the city moved for dismissal or requested dismissal and prayed for dismissal in response to the request to revise the scheduling order, the plaintiff not only didn't engage that, but the plaintiff said, I don't have to, and it's improper for the city to make that assertion. But they refused to engage that argument. And even in this court, the plaintiffs have, in their appellate briefing, stated they don't have to explain to anybody how they can prevail. They should just be sent back. And so if they're sent back, we have those unchanged – Well, we don't know. I mean, we don't know until we have a pleading as to whether their position has any merit, do we? I mean, we say, what are you going to plead? Well, you can't tell me what you're going to plead. Well, under the law of the case, they can't change the facts that this panel, this court's panel, already decided, which is Mr. Oliva's conduct posed an immediate, significant threat of serious injury or death to everyone in the house, which included Elliot. That's the gasoline part. But Monell is not independent of the underlying people, right? It's not some separate cause of action. It is not. You have to find – So that's the point. There has to be someone who did something wrong for there to be the Monell. Exactly. You don't reach Monell if there's not a constitutional violation, and that's what Keller decided. But the counsel just told us. I'm sorry. I thought you answered it. If you have some more for Judge Haynes, go ahead. I'm having trouble hearing. I'm sorry. Please explain why it matters whether these people are liable or not for a constitutional violation to the Monell question. Well, they don't have to be liable. They don't have to be sued. But the Monell question – They have to have committed a constitutional – They have to have committed a constitutional violation, and that's what City of Los Angeles v. Keller says. In that case, it was actually tried to a jury, and the jury determined that the officers hadn't violated the constitution. So the city came in and said, well, absent a constitutional violation, we can't be liable under Monell. And so the Supreme Court ultimately agreed, and that's how Heller got dismissed, or the city got dismissed in Heller. And that's the key here is if there's no constitutional violation, then what does it matter what the Monell arguments are? Well, there's two problems. First is Carver says we can't do this harmlessness analysis that you're asking us to do, that we're not allowed to say, hmm, it's harmless because they're not going to be able to plead anything anyway. So we have a 2021 case that says that, so address that. And then the second problem with it is the panel opinion only says that the two gentlemen, Guadalrama and Jefferson, didn't commit constitutional errors. And what he just said in court, if he needed to come up with some kind of plausible theory, is that Eliot, by acting when Eliot was keenly aware that this was a volatile situation and he had the gasoline right there, chose to do something that was allegedly provocative by doing the pepper spray, which then led to the gentleman, the deceased gentleman, putting the gasoline on him. Now, whether that wins or not, it's a, I mean, it may be a difficult case. But we can't, we don't play three hands. This is not we move 10 chess moves ahead. We have to play this out as the civil procedural rules require. And I think I can make some points that I think will address your questions and comments, Your Honor. Please do. That's why I asked them. And I think I'm going to cover everything. If not, let me know. And Davuti, which predates the Carver case, and you wrote Davuti, so I'm sure you're more familiar with it than I am. But in Davuti, as long as the procedure employed was fair, then it's proper to affirm the district court's action. And what I'm saying at the beginning of this discussion is that Davuti, Carver, and the other cases didn't have a party asking the court to dismiss for particular grounds. And here the city asked for dismissal on the Heller grounds because there was no underlying constitutional violation. And when the court ultimately, district court or this court here, is analyzing the facts that have already been determined in the first opinion, the facts that have been determined is everyone in the house faced a deadly risk. That includes Officer Elliott. And all that Elliott did was use pepper spray, not deadly force. And I cited, I think, five cases in which lesser threats were facing officers who used pepper spray, and this court said that it wasn't a violation of Fourth Amendment standards to use pepper spray. And all of this could be aborted if you had not tried to tuck in the motion to dismiss under a motion that had a completely different misleading title. In other words, you just didn't follow a clear procedure, and it's wound up in dismiss. Why didn't you follow a motion to dismiss? Your Honor, the city had filed a motion to dismiss, which the district court denied because it wanted to explore the facts on the immunity issue. And so upon return to the district court, the city… Did it ever have a hearing on that? I'm sorry? Did it ever have a hearing on that motion to dismiss? No, in the Northern District, it's all done by briefing. It's unusual. Was it ever briefed? I'm sorry? Was it ever briefed? Yes, it was fully briefed. But it was briefed before the appeal. Correct, yes. So it was never briefed after the appeal, and you just said, well, the appeal takes care of it, so we don't even need to fool with discovery or scheduling. It's not appropriate, and it's not a fair procedure, because in a reply brief, you don't get to… So I don't think that you can say this is fair under Davuti. So can maybe you go to the question of whether or not we should wait and bundle this all with a big bow at the end of when the Supreme Court may rule in a week or two, may carry it over. You never know. I've seen the Supreme Court carry something for two and a half years. But sometimes if they reset it a bunch of times right towards the end of the term, they might rule the very next time. And so we don't – it's a mystery. I agree it's a mystery, and I don't know what they're going to do or when they're going to do it. This court had already denied a request for a stay of mandate, but certainly this court has the authority to hold off on its ruling and see what the Supreme Court does. What is your position on that? I think it would make sense to see if the Supreme Court is going to dispose of this case. Before we address this case, wait and see what the Supreme Court does. Frankly, I think it makes sense, yes. I mean obviously if the Supreme Court reversed us, we would never even have to get to all of this stuff about whether the Monell was correctly handled by the district court. If the Supreme Court denies cert or affirms the decision of the panel in the first appeal, then we would have to rule on this point. Yes, Your Honor. And if we ruled on it now and sent it – if we ruled on it in your favor, okay. The problem is then it kind of falls apart, and then if they reversed us, then I don't know what happens then. If we reversed and sent it back, then you all are litigating a case that may be quite different down the road, and that's what you don't want to do, right? Correct. Okay. And frankly, I do think it would make sense to see, especially we're about three weeks from the end of the term, and I think they have this Friday session, which has been rescheduled to Friday, and then two more sessions – or conference sessions after that. They've got bigger problems in this case. Yes, they do, and I suspect that their attention is diverted. Well, qualified immunity has been a bit of an issue putting aside this specific case for a while in cases before the Supreme Court. And I'm sure that parties in this case consider this to be an extremely important case, so we're not in any way – I'm not suggesting otherwise. No, that's why I'm just – I'm simply saying that qualified immunity comes up in a lot of cases regardless of whether this case was correctly decided or not. Under the current law, qualified immunity could still be changed. I wasn't talking about – It's not in effect at all for what happened here. I wasn't talking about your comment about qualified immunity. I was saying in regard to whether the Supreme Court has bigger cases. I'm sure the parties in this case think this case is very important. That was the comment that I was responding to. I understood that, Your Honor. And you understood that, and it wasn't commenting on whether the Supreme Court – I understand that. – in the qualified immunity. Thank you. I understand. Thank you. I actually have three minutes left. If there's anything that the court would like me to address, I'd be happy to. If not, I'll give you back some time. Thank you very much. Thank you. Well, I hope that both sides have learned to be a little more careful in the district court, file Rule 59s, file more proper motions, just – and I'm not meaning any disrespect, and I'm not saying how I think we should rule. I'm just saying hopefully this is helpful. Thank you. With all due respect, if I stop here, I'm going to be assigned to a soft round at some point. There you go. Appreciate that. Unless the court has any questions for me, I will leave it on rebuttal. I think we have your argument. Thank you. This case is submitted. The court will stand in recess until 9 a.m. tomorrow.